UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT E. McKENNA,

    Plaintiff,

v.

          Hon. John Corbett O'Meara

          Case No. 04-74546

THE CITY OF ROYAL OAK, a municipal
corporation, OFFICER P. CLONAN, BADGE
NO. 168, OFFICER P. EDGELL, BADGE NO. 208,
OFFICER B. HONSOWETZ, BADGE NO. 173, and
POLICE OFFICER JOHN DOES,
jointly and severally,

    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendants' motion for summary judgment, filed August 15, 2005. Plaintiff submitted a response on September 14, 2005; and Defendants filed a reply on September 19, 2005. The court heard oral argument on October 6, 2005, and took the matter under advisement. For the reasons set forth below, the court grants in part and denies in part Defendants' motion.

**BACKGROUND FACTS**

This is an action brought pursuant to 42 U.S.C. § 1983. On March 18, 2004, Plaintiff, Scott McKenna, was suffering from a seizure in his home in Royal Oak, Michigan. He had apparently never had a seizure before. His fourteen-year-old daughter, Alexandra, heard McKenna making "growling" noises and thought he sounded like he was choking. She called 911 and Royal Oak police and emergency medical technicians were dispatched to the home.

Royal Oak police officers Edgell and Honsowetz arrived first.  Plaintiff's daughter directed them to Plaintiff's bedroom, where they found Plaintiff lying in bed.  According to the officers, Plaintiff's breathing was labored.

Alexandra McKenna testified that one officer asked her some questions about her father's condition, while the other checked on Plaintiff.  According to Alexandra, the officers attempted to rouse Plaintiff and to help him get dressed.  Pl.'s Ex. 4 at 15-20.

> The officers were talking to him, asking him if he could get up.
> They asked him to get up off his bed.

Q: Did he respond to that in any fashion?

A: Not for a while.  He sat up, but he was still like mumbling, and he was still like doing the same things.

\* \* \*

> After that, they told him to get his pants on, and he got up.  He started picking up his pants, but then he just like sat back down and started laying back down, and the police tried to pick him back up.
>
> They picked him up by his hands, and they like pulled him up from the ground and told him to put his pants on.

\* \* \*

> Then he sat back down, and he didn't want them – I can't say that.  He rejected what they were doing.  He was trying to pull back, and he didn't want the police touching him.
>
> He was telling them to stop.

Q: Could you understand those words?

A: Yeah.

Q: Was he still muttering and growling and going on at the same time?

A: Yes.

> Q: Okay. We're at the point where they try to, what, guide him up with his hands?
>
> A: They took his wrists and pulled him up.
>
> * * *
>
> They just tried to put – get his pants on, and he was like – he kept pushing back and like trying not to get them to – for them to – he just didn't want anyone touching him.
>
> He was pulling back from them. So they were trying to pull him up, and he was trying to lay back down.
>
> Next the police officers kept on trying to pull him up and get him to be standing up, and he just laid back down, and they eventually started handcuffing his wrists and his ankles so he couldn't move. And then he got – he started moving a lot more after that.
>
> * * *
>
> He started trying to move to try to get out of the handcuffs, so he was moving around a lot. His arms he was trying to get out of the handcuffs as well as ankles. And so he just was really moving a lot and the police tried to get him to stop moving.
>
> * * *
>
> They were pressing down on him, so he would stop moving.

Pl.'s Ex. 4 at 15-19.

The police officers presented a different story. According to the officers, one of them attempted to rouse Plaintiff by gently shaking him. The officers testified that Plaintiff immediately became aggressive and violent, pushing the officers away and causing Officer Honsowetz to fall backwards. Officer Edgell claims that Plaintiff ripped off the officer's clip-on tie and his leather gloves. The officers assert that it was necessary to handcuff Plaintiff because of his violent and aggressive behavior.

When the Royal Oak firefighters arrived on the scene, they also described Plaintiff as

"fighting with the police" and "combative and strong." The firefighters strapped Plaintiff to a stretcher and transported him to Beaumont Hospital. After receiving some medication, Plaintiff apparently calmed down. He was diagnosed by the emergency room doctor as having had a "new onset seizure." Plaintiff has no recollection the events that took place during his seizure; he only remembers "waking up" in the hospital.

Plaintiff filed this action against the City of Royal Oak and Officers Edgell, Honsowetz, and Clonan. Plaintiff's complaint asserts claims of assault and battery, deprivation of civil rights pursuant to § 1983, false arrest and imprisonment, and slander. The state claims were remanded to state court, leaving Plaintiff's § 1983 claim. Specifically, Plaintiff contends that his Fourth Amendment rights were violated when he was handcuffed, "arrested," and subjected to excessive force.

## LAW AND ANALYSIS

Defendants claim that (1) Plaintiff has failed to establish a cause of action against the individual officers because Plaintiff was not arrested and the officers used reasonable force to restrain him; (2) the officers are entitled to qualified immunity; and (3) the City of Royal Oak is not liable because there is no evidence that the city's policy was the moving force behind the alleged constitutional violations.[1]

### I.     Fourth Amendment Violations

Defendants claim that there is no Fourth Amendment violation because Plaintiff was not technically "arrested" and that reasonable force was used to restrain him. However, a person

---

[1] Defendants also argued that Officer Clonan should be dismissed because he was not personally involved with the events at issue here. The parties agreed at the hearing that Officer Clonan should be dismissed without prejudice.

need not be "arrested" and transported to the station house to be considered "seized" within the meaning of the Fourth Amendment. A "person has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Buchanon, 72 F.3d 1217, 1223 (6th Cir. 1995) (citation omitted). See also Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) ("A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'").

In this case, it is undisputed that Plaintiff was handcuffed and restrained by the officers. A reasonable person would not have believed Plaintiff was free to leave at that time. Although Defendants claim that Plaintiff was only restrained so that he was not "free to attack the officers," there are differing accounts of the events that day. Plaintiff's daughter testified that Plaintiff did not "attack" the police, but was merely attempting to remain in bed. Notably, Defendants do not argue that their actions were reasonable even if Plaintiff's version of events is accepted.

"In order to assess the reasonableness of [the officer's] conduct as a general proposition, it is necessary 'first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen,' for there is 'no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails.'" Terry v. Ohio, 392 U.S. 1, 21 (1968) (citation omitted). Because the facts are disputed, this court is not in a position to determine whether the defendant officers' seizure of Plaintiff was reasonable under the circumstances.

These questions of fact preclude summary judgment on the issue of whether Plaintiff's seizure was reasonably necessary to protect the officers' safety, as they claim.

The same is true with respect to Plaintiff's excessive force claim. "Determining whether the force used to effect a particular seizure is 'reasonable' under the circumstances requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." See Graham, 490 U.S. at 396 (citation and internal quotation marks omitted).

Plaintiff asserts that the officers provoked the situation by forcing the Plaintiff to get out of bed before the EMTs arrived to treat him. Defendants claim that they used reasonable force under the circumstances, because Plaintiff was violent and aggressive. Plaintiff's daughter testified, however, that her father kept trying to get back in bed and did not "attack" the police. Based upon Plaintiff's daughter's account of the events, it may not have been reasonable for the police to forcibly handcuff and restrain Plaintiff. See Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900-905 (6th Cir. 2004) ("The diminished capacity of an unarmed detainee must be taken into account when assessing the amount of force exerted."). Again, Defendants do not cite authority for the proposition that, under Plaintiff's version of events, the amount of force was reasonable as a matter of law. Accordingly, there are material questions of fact that preclude summary judgment on this issue.

## II.     **Qualified Immunity**

In the alternative, Defendants claim that the individual officers are entitled to qualified immunity. "In civil damage actions arising out of governmental officials' performance of

discretionary functions, the officials are generally entitled to qualified immunity from suit 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Greene v. Barber, 310 F.3d 889, 894 (6th Cir. 2002) (citation omitted). In determining whether Defendants are entitled to qualified immunity, the initial inquiry is as follows: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-202.

As discussed above, taken in the light most favorable to Plaintiff, the facts suggest that Plaintiff's Fourth Amendment rights were violated. Defendants contend, without much analysis, that a reasonable person in their position would have believed their actions were lawful. However, Defendants' argument hinges on the court's acceptance of Defendants' version of the facts – that Defendants were only acting to restrain a violent and aggressive individual. Defendants do not argue that they are entitled to qualified immunity under Plaintiff's version of the facts of this case. Accordingly, as discussed above, these disputed issues of fact make summary judgment inappropriate on Defendants' qualified immunity claim. See Champion, 380 F.3d at 900 ("[W]here the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.").

**III.**     **Municipal Liability**

Plaintiff claims that the City of Royal Oak is liable under § 1983 because it has a policy or practice of failing to properly train its officers to respond to calls for medical assistance. The standard for liability for failure to train is as follows:

> We hold today that inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition in *Monell*. . . that a municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation. Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983.

City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Plaintiff acknowledges that the officers "have had one course in Epileptic training," although he asserts that "it was apparently inadequate or the officers would not have conducted themselves in the manner they did." Pl.'s Br. at 7. Plaintiff does not appear to meet, however, the high standard of "deliberate indifference" outlined in Harris:

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. *Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal.* And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

Harris, 489 U.S. at 390-91 (emphasis added). Based on the record before the court, it appears

that Plaintiff is merely claiming that the officers here would not have handcuffed or injured him had they been properly trained. This is not sufficient under Harris. Accordingly, summary judgment is appropriate in favor of the City of Royal Oak on Plaintiff's municipal liability claim.

## ORDER

Therefore, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is GRANTED IN PART with respect to Plaintiff's claim against the City of Royal Oak.

It is further ORDERED that Defendants' motion for summary judgment is DENIED IN PART with respect to Plaintiff's Fourth Amendment and Defendants' qualified immunity claims.

It is further ORDERED that, consistent with the agreement of the parties, Plaintiff's claim against Defendant Officer Clonan is DISMISSED WITHOUT PREJUDICE.


                    s/John Corbett O'Meara
                    John Corbett O'Meara
                    United States District Judge

Dated: October 19, 2005