UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT E. McKENNA,

    Plaintiff,

v.

    Hon. John Corbett O'Meara

    Case No. 04-74546

THE CITY OF ROYAL OAK, a municipal
corporation, OFFICER P. CLONAN, BADGE
NO. 168, OFFICER P. EDGELL, BADGE NO. 208,
OFFICER B. HONSOWETZ, BADGE NO. 173, and
POLICE OFFICER JOHN DOES,
jointly and severally,

    Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS'
SECOND MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendants' motion for summary judgment, filed July 12, 2007. This matter has been fully briefed. The court heard oral argument on September 20, 2007, and took the motion under advisement. For the reasons set forth below, Defendants' motion is denied.

**BACKGROUND FACTS**

This is Defendants' second motion for summary judgment. With respect to the first motion, the court granted summary judgment in favor of the City of Royal Oak, but denied summary judgment with respect to Plaintiff's claims against the individual police officers. Specifically, the court denied the officers' claim of qualified immunity because the facts underlying that claim were in dispute. The officers appealed; and the Sixth Circuit affirmed. Subsequent to that appeal, the officers filed this motion, claiming that a new Sixth Circuit case requires that summary judgment be granted in their favor. See Peete v. Metropolitan Govt. of

Nashville, 486 F.3d 217 (6th Cir. 2007). For convenience, the court will restate the facts.

This is an action brought pursuant to 42 U.S.C. § 1983. On March 18, 2004, Plaintiff, Scott McKenna, was suffering from a seizure in his home in Royal Oak, Michigan. He had apparently never had a seizure before. His fourteen-year-old daughter, Alexandra, heard McKenna making "growling" noises and thought he sounded like he was choking. She called 911 and Royal Oak police and emergency medical technicians were dispatched to the home. Royal Oak police officers Edgell and Honsowetz arrived first. Plaintiff's daughter directed them to Plaintiff's bedroom, where they found Plaintiff lying in bed. According to the officers, Plaintiff's breathing was labored.

Alexandra McKenna testified that one officer asked her some questions about her father's condition, while the other checked on Plaintiff. According to Alexandra, the officers attempted to rouse Plaintiff and to help him get dressed. Pl.'s Ex. D at 15-20.

> The officers were talking to him, asking him if he could get up.
> They asked him to get up off his bed.
>
> Q: Did he respond to that in any fashion?
>
> A: Not for a while. He sat up, but he was still like mumbling, and he was still like doing the same things.
>
> * * *
>
> After that, they told him to get his pants on, and he got up. He started picking up his pants, but then he just like sat back down and started laying back down, and the police tried to pick him back up.
>
> They picked him up by his hands, and they like pulled him up from the ground and told him to put his pants on.
>
> * * *
>
> Then he sat back down, and he didn't want them – I can't say that. He rejected

what they were doing. He was trying to pull back, and he didn't want the police touching him.

He was telling them to stop.

Q: Could you understand those words?

A: Yeah.

Q: Was he still muttering and growling and going on at the same time?

A: Yes.

Q: Okay. We're at the point where they try to, what, guide him up with his hands?

A: They took his wrists and pulled him up.

* * *

They just tried to put – get his pants on, and he was like – he kept pushing back and like trying not to get them to – for them to – he just didn't want anyone touching him.

He was pulling back from them. So they were trying to pull him up, and he was trying to lay back down.

Next the police officers kept on trying to pull him up and get him to be standing up, and he just laid back down, and they eventually started handcuffing his wrists and his ankles so he couldn't move. And then he got – he started moving a lot more after that.

* * *

He started trying to move to try to get out of the handcuffs, so he was moving around a lot. His arms he was trying to get out of the handcuffs as well as ankles. And so he just was really moving a lot and the police tried to get him to stop moving.

* * *

They were pressing down on him, so he would stop moving.

Pl.'s Ex. D at 15-19.

The police officers presented a different story. According to the officers, one of them attempted to rouse Plaintiff by gently shaking him. The officers testified that Plaintiff immediately became aggressive and violent, pushing the officers away and causing Officer Honsowetz to fall backwards. Officer Edgell claims that Plaintiff ripped off the officer's clip-on tie and his leather gloves. The officers assert that it was necessary to handcuff Plaintiff because of his violent and aggressive behavior.

When the Royal Oak firefighters arrived on the scene, they also described Plaintiff as "fighting with the police" and "combative and strong." The firefighters strapped Plaintiff to a stretcher and transported him to Beaumont Hospital. After receiving some medication, Plaintiff apparently calmed down. He was diagnosed by the emergency room doctor as having had a "new onset seizure." Plaintiff has no recollection the events that took place during his seizure; he only remembers "waking up" in the hospital.

Plaintiff filed this action against the City of Royal Oak and Officers Edgell, Honsowetz, and Clonan. Plaintiff's complaint asserts claims of assault and battery, deprivation of civil rights pursuant to § 1983, false arrest and imprisonment, and slander. The state claims were remanded to state court, leaving Plaintiff's § 1983 claim. Specifically, Plaintiff contends that his Fourth Amendment rights were violated when he was handcuffed, "arrested," and subjected to excessive force. As noted above, the court has already dismissed the municipal liability claim against the City of Royal Oak.

## LAW AND ANALYSIS

The Defendant officers contend that they are entitled to qualified immunity because their actions did not violate Plaintiff's clearly established constitutional rights. "In civil damage

actions arising out of governmental officials' performance of discretionary functions, the officials are generally entitled to qualified immunity from suit 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Greene v. Barber, 310 F.3d 889, 894 (6th Cir. 2002) (citation omitted). In determining whether Defendants are entitled to qualified immunity, the initial inquiry is as follows: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-202.

Defendants contend that they are entitled to qualified immunity pursuant to Peete. In that case, the defendants were firefighters, paramedics and emergency medical technicians. They were called to a home after the decedent's grandmother called 911. The decedent was having an epileptic seizure. Upon arriving, the defendants restrained the decedent by "using their bodies to apply weight and pressure to his head, neck, shoulders, arms, torso and legs in an attempt to prevent the decedent from moving." Peete, 486 F.3d at 220. Shortly after being restrained in this manner, the decedent died.

The Sixth Circuit determined that there was no Fourth Amendment violation, noting that "there are no cases applying the Fourth Amendment to paramedics coming to the aid of an unconscious individual as a result of a 911 call by a family member." Id. at 220. The court also

stated that "where the purpose is to render solicited aid in an emergency rather than to enforce the law, punish, deter, or incarcerate, there is no federal case authority creating a constitutional liability for the negligence, deliberate indifference, and incompetence alleged in the instant case." Id. at 221.

The Defendant police officers assert that they arrived at the McKenna house as "first responders" and that, pursuant to Peete, the Fourth Amendment does not apply to their actions. Defendants argue that they were attempting to help McKenna and were not there in a law enforcement capacity. Although Defendants' argument has some appeal, the court must view the facts in the light most favorable to Plaintiff. Viewing the facts in that light, it is not clear that the police officers were attempting to provide medical assistance. According to Plaintiff's daughter, the officers attempted to get Plaintiff out of bed and get him dressed. Plaintiff resisted and attempted to lie back down. According to the officers (and contrary to Plaintiff's daughter's testimony), Plaintiff then became aggressive and violent and needed to be restrained. Unlike the paramedics in Peete, the police officers here were not necessarily offering medical assistance.[1] Although the police officers were first on the scene and "first responders," it is not clear that trying to get someone out of bed and get him dressed constitutes medical assistance. At minimum, it appears that the police officers' motivation is at issue. Accordingly, the court finds that Peete does not apply here. See also Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900 (6th Cir. 2004) ("[W]here the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.").

Defendants also claim that the Fourth Amendment is not designed to create liability for

---

[1] In Peete, the facts surrounding the paramedics' actions did not appear to be in dispute.

"inappropriate medical treatment." However, as noted above, it is not clear that the police officers were attempting to render any medical treatment. Therefore, this argument is inapposite.

**ORDER**

IT IS HEREBY ORDERED that Defendants' July 12, 2007 motion for summary judgment is DENIED.

        s/John Corbett O'Meara
        United States District Judge

Dated: September 21, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, September 24, 2007, by electronic and/or ordinary mail.

        s/William Barkholz
        Case Manager