UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT E. McKENNA
    Plaintiff,                                           Case No. 04-74546
v.                                                     Hon. John Corbett O'Meara

CITY OF ROYAL OAK,
P. CLONAN,
PERRY EDGELL and
BRIAN HONSOWETZ
    Defendants.
_____/

## OPINION AND ORDER DENYING MOTIONS FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND FOR A NEW TRIAL AND GRANTING THE MOTION FOR REMITTITUR

Before the court are Defendants' Motions for Judgment Notwithstanding the Verdict, for a New Trial, and for Remittitur. The motions were filed March 18, 2008 and have been fully briefed. For the reasons stated below, this court denies the motions for judgment notwithstanding the verdict and for a new trial, and grants the motion for remittitur.

## FACTUAL BACKGROUND

The motions arise out of a March 4, 2008 jury verdict that found Defendants Edgell and Honsowetz (Defendants) liable for $281,000 in damages for violating Plaintiff's Fourth Amendment rights. The facts presented to the jury revolve around the March 18, 2004 response by Defendants to a medical emergency. That day, Plaintiff's 14 year old daughter, Alexandra, called 911 because she thought her father was choking and needed immediate medical attention. What she was in fact describing were signs of a seizure. Alexandra told 911 that her father was making "growling noises" and his teeth were clenched. When she called him by name, her father could not respond. As a result, two Royal Oak Police Officers, Defendants Edgell and Honsowetz (Defendants), were dispatched to Plaintiff's home in Royal Oak.

When they arrived, Defendants found Plaintiff in his bedroom. Defendants stated that when they called Plaintiff by name and gently shook him, he was able to somewhat sit up in his bed and open his eyes, but that Plaintiff had a "wild eyed" look in his face. Defendants testified that they tried calming Plaintiff through verbal assurances and by putting a hand on his shoulder;

however, according to Defendants, their words did not seem to register with Plaintiff, and instead, Plaintiff became aggressive. As Plaintiff struggled, Defendants held him on the bed and eventually handcuffed Plaintiff for his own safety and theirs. At about this time, EMS personnel arrived and Plaintiff was sent by ambulance to Beaumont Hospital for treatment. In all, Defendant officers portrayed their actions as purely medical, a first response to an emergency that arose from Plaintiff's seizure. Paramedics testified that Defendants followed proper protocol by both holding down Plaintiff and in searching for alcohol or drugs that may have caused the seizure.

Plaintiff's view was significantly different. Plaintiff through Alexandra's testimony adds that the Defendant officers took more of a law enforcement posture when they arrived. Defendants asked if Plaintiff was using drugs and if he had assaulted Alexandra. Plaintiff portrayed the actions as non-medical, and investigatory in nature. Defendants ran Plaintiff's license plate, asked the daughter about the possibility of assaults against her and the use of illicit drugs, and searched Plaintiff's bedroom and bathroom for drugs. Plaintiff also cited to expert testimony to support the idea that Defendants' use of restraint was inconsistent with police procedure in medical emergencies.

## LAW AND ANALYSIS

**A.     Standards of Review**

In order to grant a judgment not withstanding the verdict, the court must determine that "no reasonable jury could have found for the nonmoving party." United States v. Alpine Industry, 352 F.3d 1017, 1022 (6th Cir. 2003). In doing so, this court must view the evidence in a light most favorable to the non moving party. Id.; Wehr v. Ryan's Family Steak Houses, 49 F.3d 1150, 1152 (6th Cir 1995). Review of a decision in this matter will be done under a de novo standard. Alpine Industries, 352 F.3d at 1022.

Fed. R. Civ. P. 59(a)(1)(A) states that a court may grant a new trial for any reason for which a new trial has been granted previously in an action at law in federal court. This court's authority under Rule 59 "is large" Bell v. Johnson, 404 F.3d 997, 102 (6th Cir. 2005); however, generally a new trial is warranted under three circumstances: (1) the verdict went against the weight of the evidence; (2) the damages were excessive; or (3) the trial was prejudiced or biased against the moving party. Holmes v. City of Massillon, 78 F.3d 1041, 1045-46 (6th Cir. 1996).

Where there is sufficient evidence that a reasonable juror could have reached the challenged verdict, a new trial is improper. Barnes v. Owens-Corning Fiberglas Corp., 201 F.3d 815, 820-21 (6th Cir. 2000).

A trial court may grant remittitur of a verdict when, "after reviewing all the evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court." Mid-Michigan Computer Systems v. Marc Glassman, Inc., 416 F.3d 505, 509 (6th Cir. 2005).

**B. Judgment Notwithstanding the Verdict and a New Trial are not warranted. Remittitur is warranted.**

The difficulty of the jury's verdict is that it leaves law enforcement in a tenuous position. On the one hand, Defendants' attempts to provide medical assistance have left them with a Fourth Amendment violation that found damages in excess of a quarter of a million dollars. On the other hand, what would have happened had the officers stood by and done nothing until paramedics arrived, or if the seizure was drug induced and the officers had failed to inform treating physicians of this potential issue because they failed to search for drugs? It is rather likely that Defendants would have face a deliberate indifference claim. Comstock v. McCray, 273 F.3d 693, 702 (6th Cir. 2001).

Although this quandary inclines this court toward reversing the jury's verdict, it cannot. When viewing the evidence in a light most favorable to the non-moving party, it is clear that a reasonable jury could come to the same conclusion that this jury came to, that is that Plaintiff's Fourth Amendment rights were violated. The evidence indicated a search was conducted and a seizure was made, both of which according to Plaintiff's evidence and witnesses were contrary to established procedure in dealing with seizures. It is apparent that the jury gave more credit to Plaintiff's case than it did Defendants' case which is its right. Although the court may disagree with the jury's findings, that alone is not enough to grant judgment notwithstanding the verdict or a new trial. See Barnes v. Owens-Corning Fiberglas Corp., 201 F.3d 815, 820-21 (6th Cir. 2000).

That said, the award that the jury made in this case is excessive and it shocks the conscience of this court. The jury award was split into $6,000 for medical damages and $275,000 for pain and suffering. Because Defendants fail to argue the propriety of the $6000

medical damages award, the court assumes that Defendants concede the issue.  As to the damages for pain and suffering, it is true that there was testimony that Plaintiff's attitude toward police has changed since this incident; however,  Plaintiff did not miss work or lose wages because of the incident.  Plaintiff admitted that overall, he and his family are doing well and his family has since called the Royal Oak Police Department for assistance which suggests at the most a minimal amount of apprehension, but hardly a fear of the police.  As for the actual incident, Plaintiff concedes that he has no recollection of it.  His only real damage is a subjective fear, again better phrased as apprehension, of the police that still allows him and his family to turn to the police when necessary.  The court cannot find a reasonable basis for such a large amount of pain and suffering damages.  The "pain and suffering" caused by Defendants' actions is minimal at best, and one must fear what physical damage could have been done had Defendants not acted.  In light of the evidence, the court finds that $10,000 is a reasonable amount for pain and suffering. Accordingly, the court will remit $265,000. If the Plaintiff chooses not to accept the remittitur then a new trial will be required.

## ORDER AND CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' motions for judgment notwithstanding the verdict and for a new trial are DENIED.  Defendants' motion for remittitur is GRANTED.

The court affirms the jury's medical damages award of $6,000 and reduces the jury's pain and suffering damages award to $10,000.

**SO ORDERED.**

In conclusion, this order sufficiently addresses the facts and issues of this case, however, it does not necessarily answer the greater question posed to this court: what exactly should the police do in a situation such as this? Plaintiff suggests that the answer lies in Champion v. Outlook Nashville, 380 F.3d 893 (6th Cir. 2004) in which the Sixth Circuit affirmed the district court's decision to deny the police qualified immunity and the district court's ruling that police used excessive force to seize a nonverbal autistic adult.  Although somewhat germane to this case, the restraints used in Champion were much more forceable to the point that they may have caused Champion's death.  In this instance the force used merely subdued a seizure victim until

paramedics could attend to his needs.  Further, the search of McKenna's home was arguably reasonable since those attending to McKenna had no knowledge at the time what caused the seizure.  As stated previously, it could have been precipitated by drugs or alcohol.

What Plaintiff would have this court do is treat police officers exclusively as law enforcement agents, holding them strictly to the protections of the Fourth Amendment regardless of their actions or intentions.  However, the responsibilities of police officers entail much more than law enforcement.  They are public safety officers who at times are asked to give medical attention to citizens.  The home search in this case illustrates this function.  The court seriously doubts the officers intended to conduct a search of Plaintiff's bedroom and bathroom so they could later arrest him for illegal drugs.  Instead, they were in the midst of a medical emergency that could be better addressed if Plaintiff's paramedics and doctors knew the cause of his seizure.  That said, this court also acknowledges that giving police offices free reign in such a situation essentially creates yet another exception to the Fourth Amendment because of such an exception is open to abuse in criminal investigations.  This court is of the mind that a middle ground could be found, one in which police officers are granted qualified immunity to take the steps necessary to ensure a citizen's health and medical needs.  At the same time however, evidence found during solely non-law enforcement conduct could be excluded.  Such a compromise would allow police officers the peace of mind to address non-law enforcement issues while still protecting the Fourth Amendment rights of a citizen.

Given the financial constraints of communities, it is very likely this situation will appear again before this court and others.  Rather than submitting it to a jury, it would be of benefit if the Sixth Circuit were to directly address the issue of law enforcement's obligation to the Fourth Amendment when law enforcement acts in a non-law enforcement capacity.


                                            s/John Corbett O'Meara
                                            United States District Judge

Date:  July 21, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, July 21, 2008, by electronic and/or ordinary mail.

                                              s/William Barkholz
                                              Case Manager